IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RONALD G. BECKER, | § |
| | § |
| VS. | § ACTION NO. 4:13-CV-520-BJ |
| | § |
| CONTINENTAL MOTORS, INC. | § |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is a Motion for Summary Judgment [doc. 34], filed by Defendant Continental Motors, Inc. on July 31, 2014. Having carefully considered the motion, response, and reply, the Court concludes that Defendant's motion should be **DENIED**.

## I. RELEVANT FACTS

In early 2011, Plaintiff Ronald Becker placed an order with Defendant Continental Motors, Inc. ("Continental") to purchase a new engine for Becker's private airplane. (Plaintiff's Original Petition ("Pl.'s Pet.") at 2-3.) After the engine was assembled by Continental and installed by Dugosh Aircraft Service Co. ("Dugosh"), Becker took delivery of his aircraft in April 2011. (Pl.'s Pet. at 3.) Pursuant to the purchase agreement, the engine Becker purchased came with warranties for both the engine as a whole and the cylinders. (Pl.'s Pet. at 3.) The relevant portion of the "New Engine Warranty" states:

> 1. (a) For a period of twenty-four (24) months or until the expiration of [Teledyne Continental Motors ("TCM")]'s recommended Time Between Overhaul (TBO), whichever occurs first, after the warranty activation date TCM will, except as excluded below, at its option repair or replace on an exchange basis any engine, component or part manufactured or supplied by it which within the applicable twenty-four (24) month or TBO period is returned to a TCM representative authorized to handle the engine covered by this warranty and which upon examination is found to the satisfaction of TCM to be defective in material or workmanship.

(Defendant's Appendix in Support of Motion for Summary Judgment ("Def.'s App.") at 20.) In addition, the relevant portion of the "Cylinder Warranty" states:

> 1. For a period of twenty-four (24) months or one thousand (1000) hours of operation, whichever occurs first, after the warranty activation date, TCM will at its

1

> option repair or replace on an exchange basis any cylinder component or related part manufactured or supplied by it which within the applicable twenty-four (24) month or one thousand (1000) hour period is returned to a representative of TCM authorized to handle the engine in which the cylinder component or related part covered by this warranty is installed and which upon examination by TCM is found to be defective in material or workmanship.

(Def.'s App. at 22.) In addition, the cylinder warranty contained the following language:

> THIS WARRANTY IS A WARRANTY TO REPAIR OR REPLACE AND NOT A WARRANTY OF THE CONDITION OR FUTURE PERFORMANCE OF THE PRODUCTS WHICH IT COVERS. THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, SPECIFICALLY, BUT WITHOUT LIMITATION, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL TCM BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF ANY DEFECT IN ANY CYLINDER OR RELATED PART, ARISING OUT OF THE FAILURE OF ANY CYLINDER OR RELATED PART TO OPERATE PROPERLY, OR ARISING OUT OF ANY BREACH OF THE WARRANTY MADE HEREIN.

(Def.'s App. at 23.) The engine warranty contained almost identical language as well. (Def.'s App. at 21.)

After allegedly noticing that the engine was consuming excessive amounts of oil, Becker returned the engine to Dugosh and Dugosh reported the problem to Continental Motors. (Pl.'s Pet. at 4-5.) Continental, through its representative Roger Gradle ("Gradle"), instructed Dugosh to send the cylinders from Becker's engine to G & N Aircraft in Griffith, Indiana to be inspected and/or reworked. (Pl.'s Pet. at 5.) Dugosh received the cylinders back in late October and reinstalled them as instructed. (Pl.'s Pet. at 5.) On October 30, 2012, Dugosh "informed Continental's warranty department that the engine still had blue smoke coming from its exhaust during the test-run that was performed in accordance with Continental's instruction" and "reported that the engine's sparkplugs, following the test-run, had been removed and found to be fouled with oil." (Pl.'s Pet. at 6.)

Continental instructed Dugosh to again remove the cylinders and send them back to G & N Aircraft. (Pl.'s Pet. at 6.) Dugosh received the cylinders back in late November 2012, and reinstalled them. (Pl.'s Pet. at 6.) After Dugosh reported to Continental that the issues with the engine allegedly continued, Continental instructed Dugosh to fly the aircraft to break in the engine, which Dugosh refused to do. (Pl.'s Pet. at 6; Defendant's Brief in Support of Motion for Summary

Judgment ("Def.'s Br.") at 7.) After various communications between Becker and Gradle and after additional tests, Gradle informed Becker that Continental would have Dugosh remove and return the defective engine and asked Becker to sign a work order. (Pl.'s Pet. at 7-8.) Becker refused to sign the work order due to the following language contained in such order:

> I hereby authorize the following services and or repair work along with the necessary parts and material, and hereby grant you and/or your employees permission to operate and fly the aircraft herein described for the purpose of testing and/or inspection. An express mechanics lien is hereby acknowledged on above aircraft to secure the amount of service and/or repairs thereto. You will not be held responsible for loss or damage to the aircraft or articles left in the aircraft in case of fire, theft, or any other cause beyond your control.

(Plaintiff's Appendix to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s App.") at 12.) On February 19, 2013, Continental "again requested that the engine be shipped to Continental's facility and indicated that the work order form did not need to be signed." (Def.'s Br. at 7; see Def.'s App. at 24.) Becker again refused to send the engine. (Def.'s Br. at 7.)

On May 30, 2013, Becker filed suit in state court, alleging claims against Continental for (1) breach of contract and express warranty, (2) violations of the Texas Deceptive Trade Practices Act ("TDTPA"), and (3) declaratory relief. (Pl.'s Pet. at 9-13.) Becker sought recovery of the "costs incurred by Becker to acquire and install the defective engine from Continental, Becker's lack of an ability to use his aircraft since September 5, 2012, . . . including both the intrinsic value associated with owning and operating his own aircraft, expenses associated with flying commercially as opposed to being able to utilize his own aircraft, the value of his lost time and attorney's fees incurred." (Pl.'s Pet. at 9.) Continental removed the case to this Court on June 27, 2013.

In its motion for summary judgment, Continental claims that it is entitled to summary judgment "because there are no genuine issues of material fact as to any element of Becker's claims because Continental has agreed to repair the engine on several occasions and has fully performed its obligations under the warranty in this case." (Def.'s Br. at 5.) In the alternative, Continental argues that it is also entitled to summary judgment because Becker cannot produce any "competent summary judgment evidence on the requisite elements of his breach of express warranty, breach of

contract, and DTPA claims." (Def.'s Br. at 16.) Continental claims that even after the filing of the suit it continued to agree to repair Plaintiff's engine. (Def.'s Br. at 7.) In addition, Continental argues that, in the alternative, it "validly disclaimed all consequential and incidental damages in its warranty, and the Court should dismiss claims for these types of damages as a matter of law." (Def.'s Br. at 5.)

## II. LEGAL STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992). Instead, parties should "identify specific evidence in the record, and ... articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994).

In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's

favor." *Sanders–Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir.2010) (citation omitted) (internal quotation marks omitted). "After the non-movant has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III. DISCUSSION

#### A.   Breach of Express Warranty Claim

"To establish breach of the express warranty to repair, a plaintiff must show not only that the product was presented to the defendant for repair but also that the defendant failed or refused to repair the defect." *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 82 (Tex. App.–San Antonio 2005, no pet.). In this case, Becker has set forth evidence, which Continental does not dispute, showing that he presented the airplane engine to Continental for repair. As to whether Continental failed or refused to repair the defect, Continental claims that Becker "cannot prove that Continental breached the warranty at issue . . . because Continental has taken every effort to diagnose and repair the aircraft engine." (Def.'s Br. at 9.) Becker, on the other hand, argues that "Continental breached the warranty by failing twice to fix the problem and then refusing to continue further repairs unless Becker bore the costs and granted Continental a mechanic's lien on the aircraft." (Pl.'s Resp. at 12.) After reviewing the evidence and the arguments, the Court finds there is a fact issue concerning, at the very least, whether Continental failed or refused to repair the engine and, thus, breached the express warranty to repair.

Continental also argues, *inter alia*, that its motion should be granted because Becker has failed to present expert evidence showing that the engine actually contained a defect. (Def.'s Br. at 17-20.) After review of the evidence, including the report of Plaintiff's retained expert Ronald Pyles (Pl.'s App. 29-34) and the Declaration of Steve Sherman ("Sherman")[1] stating that "the defective

---

[1] Sherman is employed by Dugosh and is a certified Airframe & Powerplant Mechanic who holds an Inspection Authorization. (Pl.'s App. at 14.) The Court has considered the objections of Continental to Sherman's declaration. (*See* Defendant's Brief in Support of Reply in Support of Motion for Summary Judgment at 9-10.) For purposes of a

engine's excessive oil consumption rate renders it and also the aircraft containing same as not being airworthy" (Pl.'s App. at 16), provides some evidence, at least for purposes of a motion for summary judgment, that Continental's engine may be defective. Consequently, Continental's motion for summary judgment should be **DENIED**. Because the Court is denying Continental's motion on the issue of breach of express warranty, the Court must also deny Continental's motion on the issues of violation of the TDTPA and declaratory judgment as they are dependent on Becker's express warranty claim.

### B. Loss of Use Damages and Attorney's Fees

Continental also argues that Becker's claims of loss of use damages of not being able to use his aircraft and for attorney's fees have been properly disclaimed and should not be allowed. (Def.'s Br. at 11-15.) Continental claims that, pursuant to Texas Business and Commerce Code section 2.714(b), which is a codification of Article 2 of the Uniform Commercial Code ("UCC"), that the typical damages for breach of warranty are measured by the difference between the "value of the goods accepted and the value they would have had if they had been warranted, unless special circumstances show proximate damages of a different amount." (Def.'s Br. at 12-13; *see* Tex. Bus. & Com. Code Ann. § 2.714 (West 2009).) While Continental acknowledges that Becker could be entitled to consequential and incidental damages under Texas Business and Commerce Code section 2.715 of the Texas Business and Commerce Code in certain circumstances, Continental claims that, pursuant to the language contained in the engine and cylinder warranties, section 2.719 of the Texas Business and Commerce Code, and comment 3 of section 2.715 of the Texas Business and Commerce Code, the parties "agreed that no such damages would be available." (Def.'s Br. at 13-14.)

Becker, on the other hand, argues that, while Continental is correct that Article 2 of the UCC allows a seller to disclaim incidental or consequential damages in a warranty, "the UCC also

---

motion for summary judgment, such objections are overruled at this time. As to the issue of timeliness of the submission of Sherman's signed declaration, the Court notes that, while procedural perfection is preferred, Continental has not shown how it was prejudiced by the filing of a signed declaration ten days late.

provides that when limited remedies fail, disclaimers such as those in Continental's warranties are ineffective and consequential damages are available." (Pl.'s Resp. at 17 (citing section 2.719(b) of the Texas Business and Commerce Code).) Becker claims that "because a fact question exists regarding whether the only remedy available to Becker under the warranties—repair or replacement of the engine—failed, summary judgment precluding consequential damages should be denied." (Pl.'s Resp. at 17.) Specifically, Becker states:

> The UCC provides that "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." Tex. Bus. Com. Code. § 2.719(b). What this means in practice is that:
>
>> Where an apparently fair and reasonable limitation because of circumstances fails in its purpose or operates to deprive a party of the substantial value of the bargain, the limited remedy must give way to the general remedy provisions of the code. From the buyer's standpoint, the purpose of the limited remedy is to give the buyer goods that conform to the contract within a reasonable time after the defect is discovered. . . . However, the limited remedy fails of its essential purpose and deprives the buyer of the substantial value of the bargain when the warrantor does not correct the defect within a reasonable time.
>
> [*Mercedes-Benz of North America, Inc. v.*] *Dickenson*, 720 S.W.2d [844,] 854 [Tex. App.–Fort Worth 1986, no writ)] (citations omitted).

(Pl.'s Resp. at 17.) In addition, Becker argues that loss of use damages are direct damages that have not been disclaimed by the warranties. (Pl.'s Resp. at 19.)

Having reviewed the case law and arguments of the parties, the Court first concludes that, pursuant to the language in the engine warranty and cylinder warranty and the definitions of consequential and incidental damages in the UCC, loss of use damages are not recoverable as direct damages in this case. *See* Tex. Bus. & Com. Code Ann. § 2.714(b), (c), 2.715. Nevertheless, Court agrees with Becker that a fact question exists whether the only remedy available to Becker under the warranties failed, which would make consequential and incidental damages potentially available to Becker, summary judgment on the issue of loss of use as a consequential or incidental damage is **DENIED**. Moreover, as to attorney's fees, there is some question whether attorney's fees are recoverable under the UCC under Texas law. *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d

55, 60 (Tex. 2008) (noting that while the UCC sections and comments are silent on the issue of attorney's fees, "[a]t least one court has held that attorney's fees may be recovered under the UCC as consequential damages"). However, even if attorney's fees are not recoverable under Becker's breach of warranty claim, they are potentially recoverable under his claim pursuant to the TDTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50(d). Accordingly, the Court declines to grant summary judgment on this issue at this time.

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED** that Continental's motion for summary judgment [doc. 34] is **DENIED**.

SIGNED March 24, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv